**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IVAN DAVILA,

    Plaintiff,

    v.

KAMIL STANISLAW PUSTUL,

    Defendant.

No. 1:23-CV-02933

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Ivan Davila was assaulted by two detainees during his pretrial detention at the Cook County Jail. R. 69, DSOF ¶ 2; R. 74, Pl.'s Resp. to DSOF ¶ 8; R. 69-2, Def.'s Exh. 2, Davila Dep. at 42:15–18, 56:5–58:8.[1] He sues Kamil Stanislaw Pustul, a correctional officer, for failing to protect him from the assault.[2] DSOF ¶¶ 3, 8; R. 26, Am. Compl. at 4–5; R. 69-3, Def.'s Exh. 3, Pustul Dep. at 9:4–18. Pustul moves for summary judgment, R. 67, Def.'s Mot., arguing that his actions were objectively reasonable and he is entitled to qualified immunity, R. 68, Def.'s Br. at 4–9. Because Davila does not raise a genuine issue of fact that could lead a reasonable jury to find that Pustul acted objectively unreasonably, and because Davila fails to overcome the defense of qualified immunity, the motion for summary judgment is granted.

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has subject matter jurisdiction over this Section 1983 case under 28 U.S.C. § 1331.

## I. Background

In deciding Pustul's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, Davila. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court notes that Davila objected to many of Pustul's Statements of Facts without citing any evidence in an attempt to raise a genuine dispute. *See generally* Pl.'s Resp. to DSOF; *see also* R. 75, Def.'s Reply Br. at 2–3. But there are no real factual disputes here, given that there is video evidence of the lead up to the assault and the assault itself,[3] and Davila also admitted all the material facts in his deposition. *See generally* Davila Dep.; R. 70, Def.'s Exh. 5, Incident Video.

In April 2022, while in pretrial detention at the Cook County Jail, Davila was transferred to a new division—Division 10, Tier 4C—that houses maximum-security detainees. Pl.'s Resp. to DSOF ¶ 8; R. 76, Def.'s Resp. to PSOF ¶ 5; Davila Dep. at 43:18–44:8, 44:21–45:7. About an hour after Davila arrived, Pustul began to facilitate "med line," during which a correctional officer releases detainees from their cells to receive medication from a nurse. Pl.'s Resp. to DSOF ¶¶ 10–11; Davila Dep. at 45:8–12, 54:7–8; Pustul Dep. at 19:1–12. After the detainees received their medication, Pustul did not immediately escort them back to their cells, so a group of detainees gathered in the common area. Def.'s Resp. to PSOF ¶ 10; Davila Dep. at 54:13–17.

---

[3]Davila objects to Pustul's video evidence because "no evidentiary foundation has been laid." Pl.'s Resp. to DSOF ¶ 12. But Davila himself laid the foundation in his deposition by admitting the material facts of the assault and specifically vouching for the accuracy of the video. *See* Davila Dep. at 67:1–3, 71:6–8.

Suddenly, another detainee approached Davila and punched him. Pl.'s Resp. to DSOF ¶¶ 15–16; Davila Dep. at 56:6–8; Pustul Dep. at 30:24–31:7. A second detainee joined the attack, and they both repeatedly kicked and punched Davila. Pl.'s Resp. to DSOF ¶ 8; Davila Dep. at 56:16–18; Incident Video at 00:21–01:30.

When the assault began, Pustul called on his radio for backup and ordered the detainees to stop fighting. DSOF ¶ 17; Pustul Dep. at 31:11–22, 54:3–13. But the two detainees continued to assault Davila. Pl.'s Resp. to DSOF ¶ 18; Pustul Dep. at 54:22–24. Pustul left the common area to make sure that the nurse was escorted safely away by another officer. DSOF ¶ 18; Pustul Dep. at 33:11–34:10. He then waited for backup in an adjacent holding area. DSOF ¶ 18; Pustul Dep. at 38:11–17. Davila says that it felt like the assault continued for "a good five minutes," but video shows that it ended after around one minute (which was still no doubt a harrowing time for Davila). DSOF ¶¶ 19, 22; Davila Dep. at 57:4–9; Incident Video at 00:21–01:30. Backup officers arrived in around three minutes and secured the detainees. DSOF ¶¶ 19–20; R. 70, Def.'s Exh. 6, Backup Video at 19:54:56–19:56:30.

Davila's eye, face, and back were injured in the assault. R. 74, PSOF ¶ 17; Davila Dep. at 77:2–15. He also continues to suffer from migraine headaches. PSOF ¶ 17; Davila Dep. at 77:2–15.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Pretrial detainees can bring a suit under the Due Process Clause against jail staff who fail to protect them from physical harm by other detainees. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). The "objective-unreasonableness standard applies to … Fourteenth Amendment claims by pretrial detainees, including failure-to-protect claims." *Id.* To survive summary judgment, the plaintiff must raise a genuine dispute on four elements:

4

(1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have *appreciated the high degree of risk* involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries.

*Id.* (emphasis added). "The third element requires an allegation that a specific defendant was on notice of a serious risk of harm to the detainee." *Id.* (cleaned up).[4]

Here, Pustul argues that Davila fails to raise a genuine dispute of fact on the third element. *See* Def.'s Br. at 4–7. He argues that (1) he had no notice of the risk that Davila would be assaulted by other detainees; and (2) once the assault began, his actions were not objectively unreasonable. *Id.* Even giving Davila the benefit of all reasonable inferences, the Court agrees that no jury can find for Davila.

First, Davila fails to produce any evidence that a reasonable officer in Pustul's position would have known—before the assault started—that Davila faced a serious risk of assault. Davila had just been transferred to the division and did not know the other detainees, including those who assaulted him. Pl.'s Resp. to DSOF ¶¶ 10, 24; Davila Dep. at 43:18–44:8, 50:23–24, 71:9–13. He spoke peacefully with one of the attackers just before the assault. DSOF ¶¶ 13–14; Davila Dep. at 51:23–52:6; Pustul Dep. at 43:23–44:16. Indeed, Davila says that the first punch came out of nowhere. Pl.'s Resp. to DSOF ¶¶ 15–16; Davila Dep. at 56:6–8; Pustul Dep. at 42:13–16. And

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

because Davila himself did not predict the assault, he of course did not warn Pustul or any other Jail staff that he would be attacked by the two detainees. Pl.'s Resp. to DSOF ¶¶ 25–26; Davila Dep. at 71:14–22, 110:1–9. Thus, Pustul was not on notice of any risk of serious harm to Davila that day. *See Kemp v. Fulton County*, 27 F.4th 491, 497 (7th Cir. 2022); *see also Young v. Dart*, 2021 WL 3633927, at \*12 (N.D. Ill. Aug. 17, 2021).

Davila says, without offering specifics, that he told the Cook County Jail he feared for his safety because he had left the Latin Kings gang and was owed a "whooping" for his departure that he had not yet received. R. 73, Pl.'s Resp. Br. at 2–4; Def.'s Resp. to PSOF ¶¶ 1, 4, 22–23, 28; Davila Dep. at 14:11–14, 38:18–39:9, 95:16–22, 96:8–12, 111:4–13. But he produces no evidence that the assault was related to his former gang membership. Davila Dep. at 53:11–24; *see Thomas*, 39 F.4th at 843. What's more, even if Davila generally warned the Jail that he feared retaliation (Davila does not say to whom he complained), there is no evidence that *Pustul* specifically should have known of this risk when Davila was transferred to his division. Perhaps if there was evidence that Jail staff have some way to track detainees' gang associations, and fights frequently occur between detainees associated with different gangs, staff with access to that information would be on notice that there is a substantial risk of violence if those detainees are placed together. But there is no evidence *Pustul* had that kind of information or should have known about Davila's former membership in the Latin Kings and its associated risk. *See Thomas*, 39 F.4th at

843. On the record evidence, no jury could find that Pustul had notice that the assault would take place before it happened.

Second, Davila's claim also fails because he does not present any genuine dispute of fact that Pustul's actions were objectively unreasonable. Davila argues that Pustul acted unreasonably by letting the two detainees who assaulted him stay out of their cells during med line. Pl.'s Resp. Br. at 3. He presents evidence that this was not the usual protocol: ordinarily correctional officers release detainees one-by-one to receive their medication and immediately return them to their cells afterwards. PSOF ¶¶ 9–10, 27; Davila Dep. at 94:19–95:15; Pustul Dep. at 19:1–12. But because Pustul had no reason to anticipate that the two detainees would attack Davila, it was not objectively unreasonable to allow them to stay out of their cells during med line. *See Young*, 2021 WL 3633927, at \*14 (holding that a correctional officer's failure to follow Jail policy when releasing a detainee from their cell did not give rise to a claim where the officer was not aware of any threat to plaintiff).

Davila says that Pustul should have been suspicious that the detainees asked to stay out of their cells. Pl.'s Resp. Br. at 3. In Davila's experience, detainees usually make this request when they wish to harm another detainee. PSOF ¶¶ 11, 21; Davila Dep. at 55:8–19. But he presents no evidence to show that, beyond his limited detention experience (which he does not describe further), this is true for all detainees. Indeed, Davila himself stayed outside in the common area, amongst the other detainees, despite the supposed risk posed by an open med line. A reasonable officer could very well believe that the detainees simply wanted more time outside of their confined

7

cells. So Davila's contention it was unreasonable to allow the detainees to remain out of their cells because Pustul should have anticipated the assault raises no genuine issue of fact.

Davila's remaining contention is that, once the attack began, Pustul failed to take reasonable measures to stop it. It is undisputed that Pustul immediately called for backup, verbally instructed the detainees to stop fighting (though they ignored the instruction), walked to the adjacent holding area to make sure that the nurse was safely escorted away, and then re-entered after three minutes when backup guards arrived. DSOF ¶¶ 17–20; Pustul Dep. at 31:11–22, 33:11–34:10, 38:11–17, 54:8–24; Backup Video at 19:54:56–19:56:30. Courts have repeatedly held that it is an objectively reasonable response for a solo prison guard to call for backup rather than try to immediately intervene in a fight between detainees. *See Fields v. Guerrero*, 2024 WL 3250444, at *4 (N.D. Ill. July 1, 2024) (holding that it was not objectively unreasonable for correctional officer to wait three minutes for backup to separate fighting detainees); *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007) ("A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy."), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015); *Giles v. Tobeck*, 895 F.3d 510, 514 (7th

Cir. 2018) (holding that a correctional officer "responded reasonably" to an attack on a detainee when she waited for backup, "rather than jump into the fray herself").[5]

Davila contends that Pustul should have done something more, such as physically stand between the detainees or spray them with mace. Pl.'s Resp. Br. at 4–6. But Pustul was outnumbered: two detainees attacked Davila. Pl.'s Resp. to DSOF ¶ 8; Davila Dep. at 56:16–18; Incident Video at 00:21–01:30. And at one point, the two detainees picked up lunch trays to use as a weapon against Davila. Def.'s Resp. to PSOF ¶ 15; Davila Dep. at 57:19–20, 59:1–12; Pustul Dep. at 43:1–5; Incident Video at 01:08–01:30. Under these circumstances, Pustul would have faced significant risk of harm if he intervened alone, so it was reasonable to wait for backup. *See Guzman*, 495 F.3d at 858; *Giles*, 895 F.3d at 514. Because Davila presents no evidence that could lead a reasonable jury to find that Pustul acted objectively unreasonably, he fails to overcome Pustul's summary judgment motion.

Pustul also argues that he has qualified immunity from Davila's claim. Def.'s Br. at 8–9. "Once a government official invokes qualified immunity in a section 1983 suit, the burden shifts to the plaintiff to defeat the defense by showing (1) that a trier

---

[5]The cited Seventh Circuit cases apply the deliberate-indifference standard, which governs Eighth Amendment claims by post-sentencing inmates (before the Supreme Court's decision in *Kingsley*, this standard also governed Fourteenth Amendment claims by pretrial detainees). *See Guzman*, 495 F.3d at 856–57; *Giles*, 895 F.3d at 513; *see also Kemp*, 27 F.4th at 495 (describing the different standards after *Kingsley*). Deliberate indifference "requires a showing of both an objectively unreasonable deprivation of rights and subjective deliberate indifference." *Kemp*, 27 F.4th at 495. Because the first element is identical to the objective-unreasonableness standard under the Fourteenth Amendment, these cases support the proposition that Pustul's actions were not objectively unreasonable.

of fact could conclude that the officer violated a federal right, and (2) that the unlawfulness of the conduct was clearly established at the time the officer acted." *Est. of Davis v. Ortiz*, 987 F.3d 635, 638–39 (7th Cir. 2021). "If the plaintiff cannot do so, the motion for summary judgment must be granted." *Id.* at 639. As just explained, Davila fails to present any genuine dispute of fact that could lead a reasonable jury to find that Pustul violated his right to due process. And in his response brief, Davila cites no cases with analogous facts to argue that it was clearly established that Pustul's actions violated the Due Process Clause; for example, he cites no cases showing that a reasonable officer would have used mace to stop the assault. *See* Pl.'s Resp. Br. at 5–6. Indeed, Davila cites no cases at all in responding to the qualified immunity defense. *See id.* So qualified immunity does apply, and is another reason why the summary judgment motion must be granted. *See Davis*, 987 F.3d at 639.

## IV. Conclusion

Pustul's motion for summary judgment, R. 67, is granted. Although the motion is granted, the Court expresses its gratitude to recruited *pro bono* counsel for ably representing his indigent client.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2026

10